BENJAMIN BURTON,

*vs.*

ISAAC T. ADKINS AND LOT INGRAM.

*Sussex, Sept. T.* 1846.

The complainant and the defendant, A. entered into a parol contract for an exchange of lands—the complainant agreeing to convey a tract of woodland and pay $300.00 in cash—the defendant, A. agreeing to convey, together with his wife, a tract of marsh, the title to which was held by the wife. Possession was mutually delivered. It was agreed that the parties should meet at the house of G. F. to execute conveyances; but such meeting was delayed and never took place. The defendant, A. cut off the timber from the woodland delivered into his possession under the contract. Afterward the defendant, A., without any tender of performance on his part, or demand upon the complainant for the execution of the contract, sold and conveyed the marsh to the defendant, I. On bill filed by the complainant for a specific performance,

*Held*, that the defendant, A. was not entitled to abandon the contract and to re-sell the marsh, without first tendering to the complainant a deed

for the marsh and demanding performance on his part; that, under the circumstances, the complainant was not in laches.

*Held further*, that the defendant, A. was not entitled to abandon the contract, after having cut the timber off the woodland and thereby substantially destroyed its value, so that the complainant could not be placed *in statu quo*.

BILL FOR A SPECIFIC PERFORMANCE OF A PAROL CONTRACT FOR THE CONVEYANCE OF LANDS.—In August, 1841, the complainant and the defendant, Adkins, entered into a parol contract for an exchange of land, situated in Sussex county—the defendant, Adkins, agreeing to convey to the complainant a tract of marsh containing fourteen acres, and the complainant agreeing, in consideration of the marsh, to convey to the defendant, Adkins, four and-a-half acres of woodland, and also to pay additionally the sum of $300.00 in cash. It was understood that the parties, together with their wives, were to meet at the house of George Frame, a conveyancer, who was designated as the person to draw the deeds for the conveyance of title. No day for this meeting was specified ; and, from one cause and another, it was delayed and never took place. Meanwhile, the parties respectively entered into possession of the land each was to take in the exchange. The complainant took possession of the marsh and cut the grass therefrom ; the defendant, Adkins, entered upon the woodland and cut off the timber. The cash payment of $300.00 was to be made to the defendant, Adkins, upon the execution of a deed by himself and wife for the marsh, the title to which was in the wife. No tender of a deed by either party was afterward made or demand of performance on the part of the adverse party. Under these circumstances the defendant, Adkins, treated the contract as abandoned, and on the 15th of June, 1843, he and his wife by deed conveyed the marsh to the defendant, Ingram, thereby disabling himself from executing his contract to convey the same to the complainant.

The bill alleged the above state of facts and that the

defendant, Ingram, had purchased with knowledge of the complainant's equity. The complainant tendered himself ready to convey the woodland and to pay the cash sum of $300.00, according to the contract; and he prayed for the specific performance thereof on the part of the defendant, Adkins, by a decree that the defendant, Ingram, in whom the legal title to the marsh was vested by the deed from Adkins, should convey the same to the complainant.

The answer of the defendant, Adkins, admitted the making of the contract, and its terms, and also the mutual delivery of possession, as alleged in the bill; but it insisted, by way of defence, that the complainant had been guilty of laches in neglecting to execute a deed for the woodland and to pay the $300.00, according to the contract; in consequence of which delay the defendant, Adkins, was entitled to treat the contract as abandoned, and to sell the marsh land to Ingram. The answer also alleged, as an additional defence, that the complainant's title to the woodland had become encumbered by sundry liens.

The answer of the defendant, Ingram, admitted that he purchased the marsh with knowledge of the contract between the complainant and Adkins.

The cause was put at issue and a deposition was taken of one witness on the part of the complainant, who testified that on one occasion he heard the defendant, Adkins, request the complainant to delay the execution of a deed.

The cause came before the Chancellor, at the Sept. Term, 1846, for a hearing on the bill, answers, exhibits and depositions.

*J. W. Houston*, for the complainant.

There has been no laches on the part of the complain-

ant. The contract fixed no time for the conveyance of title; and but a short time elapsed between the making of the contract and the sale to Ingram. Meanwhile, no demand had been made upon the complainant by Adkins, or tender of performance upon his own part; but, on the contrary, it is proved that Adkins himself requested delay.

With respect to the liens upon the complainant's title they present no obstacle to a specific execution of the contract. They consist of judgments entered since the contract was entered into, and their lien is subject to the defendants' equity in the woodland. A conveyance to the defendant, under a decree, would pass a title clear of such liens.

*E. Wootten,* for the defendants, insisted that, under the circumstances, there had been gross negligence on the part of the complainant; also, that the effect of the judgments was to make a doubtful title in the complainant, which the defendant, Adkins, was not bound to accept. *Sugden on Vendors* 244; *Jeremy's Equity* 448 (*margin*, 449); 4 *Ves. Jr.* 686.

Johns, Jr., Chancellor.—The case should be considered with reference to the state of things existing at the time of the sale to Ingram. For, from that period the defendant, Adkins, by the deed from himself and wife to Ingram, disabled himself from any execution of his contract with the complainant. It is, therefore, only necessary to consider whether, anterior to such conveyance to Ingram, the complainant had been guilty of gross negligence by the omission to execute a deed from himself and to pay the $300.00. Such negligence justified Adkins in abandoning the contract.

It is evident that, under the contract, the complainant was to hold the $300.00 in consequence of the title to the

marsh being in the wife of Adkins; and that he was not bound to pay this cash sum, or to execute a deed on his part,until the title to the marsh should be conveyed to him, or until, at least, a tender of such conveyance should be made.   Until such conveyance or tender by the defendant, Adkins, the complainant, could not be in laches.   Had Adkins and his wife executed such conveyance and tendered the same to the complainant, with a demand for performance on his part, or, what would have been better, had they deposited such conveyance in the hands of Mr. Frame, as an escrow, to be delivered on payment of the $300.00 and the execution and delivery of a deed by the complainant for the woodland, and had the complainant thereafter refused or neglected to accept such conveyance and to execute the contract on his part, by conveying the woodland and paying the $300.00 ; and further,had this defendant not so materially altered the condition of the property accepted by him in part execution of the contract, as he has done by cutting off the timber, in a great degree destroying its value—under such a state of facts, he might have been entitled to declare the contract abandoned and to re-sell his own land.   But, under the present state of facts, a court of equity cannot hold him justified in that course, both because he had not himself, before the re-sale to Ingram,tendered performance of the contract on his own part or taken the usual and proper steps to obtain its execution by the complainant; and, additionally, because, having cut off nearly all the timber, it would be against equity and good conscience to allow him to repudiate the contract, after he had himself gained such substantial benefits under it, and so altered the condition of the land delivered to him as not to be able to put the complainant *in statu quo.*

Under all the circumstances this is a clear case for equitable relief.   The complainant has not been guilty of laches, such as to forfeit his right to a specific perform-

ance; and his equity is strongly enforced by the condition in which the defendant has placed the woodland; so that to deny him relief would be practically to leave him deprived both of the benefit of the contract and of all that was substantially valuable in his own property—and that without any laches on his part.

The defendant, Ingram, having purchased with knowledge of the contract, took his title subject to the complainant's equity.

Let a decree be entered according to the prayer of the bill.